The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Mark F. GALLEGOS, Defendant–
Appellee.

No. 96CA1093.

Colorado Court of Appeals,
Div. V.

Jan. 22, 1998.

As Modified on Denial of Rehearing
April 2, 1998.

Certiorari Granted April 19, 1999.

A. William Ritter, Jr., District Attorney, Nathan B. Coats, Chief Appellate Deputy District Attorney, Denver, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Robin Desmond, Deputy State Public Defender, Denver, for Defendant–Appellee.

Opinion by Judge RULAND.

The prosecution appeals from the trial court's order determining that the Department of Corrections' application of the parole statutes to defendant, Mark Gallegos, violated the constitutional prohibition against ex post facto laws. We reverse and remand for further proceedings.

In March 1984, defendant was sentenced in two separate cases to the Department of Corrections (DOC) for felonies he committed in the fall of 1983. The trial court ordered defendant to serve concurrent terms of 12 and 20 years, respectively. The court also ordered that defendant serve one year of mandatory parole pursuant to the sentencing laws in effect at that time. *See Thiret v.*

*Kautzky,* 792 P.2d 801 (Colo.1990)(discussing pre– and post–1979 sentencing laws).

Following defendant's incarceration, DOC projected a mandatory parole date for defendant, based upon his "governing sentence" of 20 years.

In November 1985, defendant committed another felony while incarcerated and was sentenced to DOC for 18 months, to be served consecutive to his 1984 sentences. However, because the statutes had been amended to provide that the parole board had discretion to determine if parole should be granted, a mandatory period of parole was not ordered. *See* Colo. Sess. Laws 1984, ch. 126, § 17–22.5–303(4) at 523; *see also* Cherner, *Colorado Felony Sentencing—An Update,* 14 Colo. Law. 2163 (1985).

Pursuant to § 17–22.5–101, C.R.S.1997, DOC combined all of defendant's sentences and treated them as one continuous 21½-year sentence. DOC then projected a parole eligibility date based upon the 21½-year sentence. Later, the DOC added a mandatory parole date.

In November 1992, defendant was granted discretionary parole effective in June 1993. Initially, parole was ordered to be served for the remainder of defendant's sentence, but that period was later reduced to five years. *See* § 17–22.5–303(6), C.R.S.1997. At some point, DOC advised defendant's parole officer that, had defendant waited two more months to seek parole, he would have been required to serve one year only. We express no opinion on the accuracy of that advisement.

In April 1995, defendant filed a post-conviction motion under Crim. P. 35 requesting that the trial court rule that his sentence had been fully served. Before the motion was heard, however, defendant absconded. Several months later, he was captured, his parole was revoked, and he was ordered to serve the remainder of his 21½-year sentence in prison.

A hearing on defendant's motion was ultimately held in February 1996. There, he argued that his sentence had been fully served as of August 1994 and that the parole statutes had been applied unconstitutionally to his sentence.

Although the trial court did not find that defendant's sentence had been fully served, it did rule that one of the statutes governing reincarceration after the revocation of discretionary parole, § 17–22.5–303(7), C.R.S.1997, had been applied to defendant in violation of the constitutional prohibition against *ex post facto* laws. The court therefore devised a formula for recalculating defendant's reincarceration period which it determined would give effect both to the mandatory and the discretionary parole provisions without increasing the legal consequences of defendant's 21½-year sentence.

## I.

■ Initially, we reject the prosecution's contention that, because the *ex post facto* argument was not specifically asserted in defendant's post-conviction motion, we should reverse the court's order.

The issue was raised at the hearing on defendant's motion and in his post-hearing brief. The prosecution has failed to demonstrate that it was prejudiced in any manner because this contention was not specifically alleged in the motion. Hence, we find no error in the court's decision to address the issue.

■ We also reject the prosecution's related contention that the trial court exceeded its jurisdiction when it provided a remedy under Crim. P. 35(c) without finding that defendant had fully served his sentence. Contrary to the prosecution's assertion, *Naranjo v. Johnson*, 770 P.2d 784 (Colo.1989) does not require that a defendant "establish" his right to be released before being entitled to relief under Crim. P. 35(c). Instead, *Naranjo v. Johnson, supra*, 770 P.2d at 787, states only that the defendant must "assert" such a right. *See also* Crim. P. 35(c)(3) (authorizing courts to "make such orders as may appear appropriate to restore a right which was violated").

## II.

Next, the prosecution contends that the trial court erred in concluding that defendant was reincarcerated for his parole violation pursuant to § 17–22.5–303(7), which autho-

rizes reincarceration for not more than five years. According to the prosecution, defendant was reincarcerated pursuant to § 17–22.5–403(6), C.R.S.1997, which authorizes reincarceration for the remainder of defendant's sentence. However, we agree with the court's ruling.

There were two distinct parole statutes applicable to defendant at the time he was paroled in 1993: § 17–22.5–303(6) (addressing parole for persons sentenced for class 2 through class 6 felonies committed on or after July 1, 1985) and § 17–22.5–403(5), C.R.S.1997 (parole eligibility for persons incarcerated for offense committed prior to July 1, 1993); *see* § 17–22.5–406(1), C.R.S. 1997 (addressing parole eligibility for offenders sentenced after July 1, 1979).

■ However, in our view, when a defendant is paroled under one of these statutes, he must also be reincarcerated for any parole violation under that same statute. *See* §§ 17–22.5–303(7) and 17–22.5–403(6), C.R.S. 1997. We find no statutory language supporting the conclusion that DOC may exercise its discretion to determine whether a prisoner paroled pursuant to § 17–22.5–303(6) may be incarcerated for a parole violation pursuant to § 17–22.5–403(6).

■ While the parole board's order does not specifically so state, we agree with the trial court's conclusion that defendant was paroled pursuant to § 17–22.5–303(6).

Specifically, in order for a defendant to be eligible for parole under § 17–22.5–403, C.R.S.1997, DOC must provide the parole board with "written certification" that the defendant has met certain criteria. *See* § 17–22.5–406(2), C.R.S.1997. Here, however, the required written certification does not appear in the record before us.

Nor is there any indication in the order that the board intended to parole defendant under § 17–22.5–403. Had the board so intended, it necessarily would have checked the appropriate box on the "Notice of Colorado Parole Board Action" next to "House Bill 1327," which added § 17–22.5–403 to the statutory scheme.

Further, although defendant was initially paroled for the remainder of his sentence as permitted in § 17–22.5–403(5), the parole board order was later modified to be only five years, consistent with § 17–22.5–303(6).

Finally, we disagree with the prosecution's argument that because DOC calculated defendant's earned time following his reincarceration based upon § 17–22.5–405, C.R.S. 1997, it necessarily follows that he must have been paroled pursuant to § 17–22.5–403. The parole board and DOC are separate entities in the Executive Branch. As noted, the parole board is the entity that determines whether an application for parole should be granted and this necessarily includes a determination as to which statute it will apply. See § 17–2–201, C.R.S.1997.

■ Accordingly, because § 17–22.5–303(7) only authorizes a reincarceration period of not more than five years, and because defendant was ordered to serve a sentence in excess of that, the trial court, on remand, should order that defendant's reincarceration period be recalculated in accordance with the mandates of § 17–22.5–303(7).

### III.

Finally, we address the prosecution's contention that the trial court erred in concluding that the application of § 17–22.5–303(7), C.R.S.1997, to his 20–year mandatory parole sentence violated the constitutional prohibition against ex post facto laws. We agree.

■ In *Spoto v. Colorado State Department of Corrections*, 883 P.2d 11 (Colo.1994), our supreme court held that if, as here, consecutive sentences have been imposed, and the earlier sentence is governed by the former mandatory parole statutes while the later sentence is not, the separate sentences are treated as one continuous sentence. As a result, the court held that a defendant's right to mandatory parole on the earlier sentence is nullified. Accordingly, based upon *Spoto*, the DOC properly combined all of defendant's sentences, treating them as one continuous 21½-year sentence, before the applicable parole date was determined.

■ As pertinent here, the constitutional prohibition against *ex post facto* legislation forbids the General Assembly from enacting a law which imposes a punishment for an act that either was not punishable at the time it was committed or that was punishable by a lesser penalty at that time. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). One of the purposes of the *ex post facto* clause is to ensure that persons who violate the laws have "fair warning" of the penalties that may be imposed upon them. *Gasper v. Gunter*, 851 P.2d 912 (Colo.1993).

■ As a result, two elements must be present for a criminal statute to be nullified as an *ex post facto* law. It must be retrospective in application, and it must disadvantage the offender affected by it. *People v. Billips*, 652 P.2d 1060 (Colo.1982).

The critical question in addressing the first element is whether the statute changes the legal consequences of acts that were committed before the statute became effective. *Gasper v. Gunter, supra.* Stated another way, as long as the statute's punitive features apply only to acts committed after the statute's effective date, it does not violate the *ex post facto* clause. *People v. Billips, supra.*

In *Gasper v. Gunter, supra*, the defendant challenged a statute that did not permit credit for time on parole if parole was subsequently revoked. The defendant argued, in part, that the statute was applied to him in violation of the constitutional prohibition against *ex post facto* laws because it was not in effect at the time he committed the crime for which he was incarcerated.

However, our supreme court held that the defendant's violation of parole conditions triggered the application of this statute. And, because the violation occurred after the statute became effective, the defendant had "fair warning" of the consequences of his actions. As a result, the court concluded that the statute was not applied retrospectively.

■ Based upon the same reasoning, because the acts that triggered the application of § 17–22.5–303(7) to defendant's parole violation occurred after this statute became effective, defendant had "fair warning" of the

consequences authorized by the statute for those violations and the statute may not be characterized as retrospective in its application.

Because the statute is not retrospective in its application, we need not address the second element of the test.

We have considered and reject defendant's contention that the application of *Spoto* in this case violates his right to due process of law.

The order of the trial court is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge KAPELKE and Judge CASEBOLT concur.